209 F.Supp.2d 981 (2002)
Billy R. KELLY, Petitioner,
v.
UNITED STATES of America, Respondent.
No. 4:01CV1803JCH.
United States District Court, E.D. Missouri, Eastern Division.
April 19, 2002.
Billy R. Kelly, St. Clair, MO, pro se.
Raymond W. Gruender, III, Office of U.S. Atty., St. Louis, MO, Michael R. Pahl, U.S. Dept. of Justice, Office of Sp. Litigation, Tax Div., Washington, DC, for U.S.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the court pursuant to the Motion for Summary Judgment filed by Respondent United States of America. See Doc. 9. Petitioner filed Objections. See Doc. 11. For the reasons set forth in this Memorandum and Order, the court grants the Motion for Summary Judgment.

*982 UNCONTROVERTED FACTS
On about April 5, 1999, Petitioner Billy R. Kelly, filed his 1998 federal income tax return, reporting $47,413 in wages, and "0" income on every other line of the face sheet of Internal Revenue ("IRS") Form 1040. Petitioner also reported $3,959.60 federal income tax withheld; $3,959.60 overpaid tax; "0" tax due; and a $3,959.60 refund claim. See Resp. Ex. 1. Petitioner's Form W-2 discloses that he earned $47,413.42 in wages from Asbury Park Housing Authority, during the tax year 1998. See Resp. Ex. 2. Petitioner's 1998 federal tax return also includes a two-paged typed attachment. See Resp. Ex. 1, Attach. In this attachment, Petitioner states that "[t]he word (income must be given the same meaning in all of the Income Tax Acts of Congress that was given to it in the Corporation Excise Tax Act of 1909.)" Id., Attach. at 3. Among other things, Petitioner also states that he "had no earnings in 1998 that would have been taxable as income under the Corporation Excise Tax Act of 1909;" that he "can only swear to having `zero' income in 1998;" that his 1998 tax return claims a refund; that his "1998 tax return and claim for refund does not constitute a `frivolous' return pursuant to Code Section 6702;" and that "[s]hould the Service disagree with the figures and amounts shown on [his] tax return, [he] demand[s] an office field audit." Id. at 4. Petitioner further states that he "will hold all IRS employees who disregard the statutes, court decisions, Privacy Act Notice provisions and other references contained in [the attachment], accountable pursuant to 26 U.S.C. [§] 7214 and 18 U.S.C. [§] 241." Id.
Petitioner's return was redacted by an IRS employee, who made a math error correction, and calculated income tax due by Petitioner. See Doc. 1, Ex. C at 48-49. Petitioner was not issued a notice of the math error. See Wilke Decl. at ¶ 13. On June 5, 2000, the IRS assessed a frivolous penalty, in the amount of $500, against Petitioner. See Wilke Decl. at ¶ 9; Resp. Ex. 3  Attach; Doc. 1, Ex. D. In October 2000, the IRS sent Petitioner a "Final Notice  Notice of Intent to Levy and Notice of Your Right to a Hearing." See Wilke Decl., ¶ 8; Resp. Ex. 3. This Notice of Intent to Levy stated that Petitioner had not responded to the IRS's request that he pay his federal tax; that the IRS could file a federal tax lien to protect the government's interest; and that Petitioner could "request Appeals consideration within 30 days." See id. The tax which the IRS requested was for a civil penalty in the amount of $500, plus $20.30, for statutory additions. See id., Attach. This letter is identified by the IRS as "letter 1058." See id. Enclosed with this letter was Publication 1660, which explains the right to a hearing, and Publication 594, entitled Understanding the Collection Process. See id.
Plaintiff exercised his right to request a Collection Due Process ("CDP") Hearing. In his request for a CDP hearing, Plaintiff stated that he sought to "challeng[e] the existence of [his] underlying tax liability." Doc. 1, Ex. B at 4. He further requested that the appeals officer "identify the specific Code section that makes [him] liable for the income tax at issue." Id. In his request for a hearing, Plaintiff contended that he did not "get a [deficiency notice] in connection with the $500 frivolous penalty," and requested that the appeals officer establish such liability. Id.
Prior to the CDP hearing Plaintiff requested that the IRS produce various documents. See Doc. 1 at ¶ 12(a)-(g), Ex. B at 4. These documents included names, federal identification numbers, job descriptions, and statutory authority upon which IRS employees relied when imposing the penalty against Plaintiff for filing a frivolous return. See id.
*983 In response to Plaintiff's request for a CDP hearing, the IRS set a date for hearing. See Doc. 1 at ¶ 13. By letter, dated June 18, 2001, it also informed Plaintiff of the requirements for and purpose of the CDP hearing, including:
(1) [V]erify[ing] that the IRS office responsible for collecting the amounts owed has met the requirements of various applicable law and administrative procedures; (2)[H]earing any relevant issue relating to the unpaid tax; (3)[C]onsidering whether the proposed collection action balances the need for the efficient collection of the taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.
Id., Ex. E-1.
The IRS further informed Plaintiff that, at the CDP hearing, he would have the opportunity to present "facts, arguments, and legal authority to support [his] position." Id. The IRS requested that Plaintiff complete a Collection Information Statement (Form 433-A) "in order to consider collection alternatives." Id., Ex. E2.
Plaintiff responded to the IRS, by letter dated June 21, 2001, in which letter he stated that IRS regulations did not require that he complete a Form 433-A. See id., Ex. F-1. Plaintiff claimed that the form which the IRS sent him was a "bogus document," and that he was not required to furnish the information requested on the form. Id.
Pursuant to Plaintiff's request to postpone the original CDP hearing date, a hearing was held on August 1, 2001. See id., Ex. E-1, Ex. E-2. In response to the appeals officer's request for issues which Petitioner wanted the appeals officer to consider, Petitioner stated that he wanted: (1) to know what statute made him liable and required that he pay taxes; (2) to be shown verification from the secretary;[1] (3) to be shown the statutory notice and demand, because CP 503, CP 504, and CP 14 do not meet this requirement;[2] and (4) to be told whether he, as a private citizen, is within the category of persons upon whose salaries taxes may be levied.[3]See id. at 91-92. At his CDP hearing, Petitioner alleged, and the appeals officer conceded, that Petitioner did not receive a statutory notice of deficiency. See Doc. 1, Ex. C (Transcript of Hearing) at 4-5. Therefore, the appeals officer informed Petitioner that he could raise the issue of liability at the CDP hearing. See id.
Also, at the hearing, Petitioner requested that the appeals officer show him the law which requires him to pay tax; asserted that the IRS engaged in "criminal activity;" and stated that the $47,000 he received was not "income," but rather "compensation for [his] labor." Id. at 10, 21, 29. Petitioner asserted that he had no earnings in 1998 that were taxable as income, and that the letters he received from the IRS were "threatening" and constituted "extortion." See id. at 6, 9, 20.
*984 During the course of the CDP hearing, an appeals officer informed Petitioner that, although there was no particular document which purported to be "Verification from the Secretary," all applicable laws and administrative procedures were met in Petitioner's case and such documentation was provided by the written communication which the IRS had with Petitioner. See id. at 10-17.
In response to Petitioner's request that the appeals officer show him statutory authority for the income tax which the IRS claimed Petitioner owed, the appeals officer directed Petitioner to provisions of the Internal Revenue Code ("the Code") which define the obligation to file a tax return and which define income. This did not meet with Petitioner's satisfaction. See id. at 25-40.
The appeals officer informed Petitioner that the IRS treated his tax return as a math error, and that 26 U.S.C. § 6213(B)(b)(1) gives the IRS the authority to make an assessment arising out of a mathematical or clerical error. See id. at 50-56. Petitioner asserted that the IRS's attempt to correct the alleged mathematical error was an improper alteration of his tax return; requested the name of the employee who made this determination and alleged alteration; and argued that he neither made a mathematical, clerical, or ethical error in filing his tax return. See id. at 51-52, 63. Petitioner also claimed that the penalty for filing a frivolous claim was an error, on the theory that the wages, as reflected in his 1998 W-2, were not `income,' and that the penalty imposed by the IRS was itself frivolous. Id. at 25-26,76.
The hearing officer referred Petitioner to 26 U.S.C. § 6207, which provides that an individual who files a frivolous tax return is liable for a penalty of $500. See id. at 77-78. Petitioner then requested that the hearing officer provide him with the "delegation order, from the secretary, authorizing the person who imposed the frivolous penalty in the first place, to do so." Id. at 79. The hearing officer informed Petitioner that he could access that information as easily as the hearing officer could, and that the hearing officer was not required to provide Petitioner with that delegation order.[4]See id. at 79-80. Petitioner stated that he was putting the two appeals officers who conducted the hearing on notice that if they "recommend seizure action by the IRS in connection with a tax for which a provision for liability or payment [] does not exist," they would be in violation of the IRS Code, which allegedly makes it a crime for an IRS agent to knowingly demand other or greater sums than authorized by law. Id. at 40.
In response to Petitioner's contention that he never received a statutory notice and demand for payment, the appeals officer informed him the notice was provided by CP 503, which was dated August 21, 2000, and which was mailed to Petitioner; by CP 504, which was mailed to Petitioner on July 31, 2000; and by CP 14, which was dated July 10, 2000.[5]See id. at 64-65, 72. CP 503 stated that the IRS had written to Petitioner regarding his tax return, but that he had not responded. See id. at 65. CP 504 stated that the IRS was imposing a penalty on Petitioner and that it intended to levy. See id. at 64-65. CP 14 requested tax payments. See id. at 65. The appeals *985 officer stated that it was his opinion CP 503, CP 504 and CP 14 constituted statutory notice pursuant to 26 U.S.C. § 6331. Petitioner did not deny that he received these documents, but argued that these documents did not comply with the requirement that they state they are "notice and demand." See id. at 65, 71-72.
On about October 25, 2001, the IRS sent Petitioner a Notice of Determination from the Appeals Office of the IRS, which notice concluded that the proposed levy action was appropriate.[6]See Resp. Ex. 5. The Notice stated that the IRS had complied with the Code, in regard to the administrative procedures applicable to Petitioner's case. In particular, it noted that 26 U.S.C. § 6321 provides for a statutory lien when a taxpayer neglects or refuses to pay a tax liability after notice and demand; that Code § 6331(d) requires that a 30-day notice be sent to a taxpayer prior to the issuance of a Notice of Levy; that the IRS complied with § 6331(d); that the IRS notified Petitioner of his right to a hearing, pursuant to § 6330(a); that Petitioner made a timely request for a hearing; and that Petitioner was provided with the opportunity to raise any relevant issues at the hearing, pursuant to Code § 6330(c). See id.
The Notice further concluded that, pursuant to § 6702, the IRS may impose a penalty on an individual's whose tax return, on its face, indicates that the self-assessment is substantially incorrect, and is based on a frivolous return. Citing case law, the Notice said that, because Petitioner's tax return reflects "0" income, while the accompanying W-2 form shows $47,413.42 in wages, his tax return is incorrect on its face. See id. In response to Petitioner's assertion that he was not issued a statutory notice and demand, citing case law, the Notice stated that the Code does not mandate the use of any specific form of notice, and that CP 15, CP 504, and letter 1058, constituted notice and demand. See id. Letter 1058, is the October 2000 Notice of Intent to Levy, which notice also informed Petitioner of his right to a hearing. See Resp.'s Ex. 3. The Notice of Determination further stated that if Petitioner disputed the IRS's determination, Petitioner had 30 days to file a complaint in United States District Court. See id.
In an affidavit, submitted with the Government's Motion for Summary Judgment, IRS Agent Douglas A. Wilke stated that upon his review of the administrative file and transcripts relative to Petitioner's dispute with the IRS over his 1998 tax return, Agent Wilke "discovered that Petitioner's 1998 return was treated as a math error and taxes were assessed based on the IRS Form W-2 attached to it." Wilke Decl. at ¶ 11. Agent Wilke further stated that "[P]etitioner was not issued a notice for the math error." Agent Wilke also stated that he recommended that "in a separate Notice of Determination, sent to [P]etitioner on October 25, 2001, that income taxes assessed for the tax year ending December 31, 1998 be abated and any reassessment of the tax be subject to the deficiency procedures." Id. at ¶ 13. Agent Wilke concluded that:
By contrast, the IRS gave proper notice of the penalty assessment ... Moreover, I determined, based on my review of Petitioner's individual income tax return (Form 1040) for 1998 (Exhibit 1), and the attached IRS Form W-2, that Petitioner had filed a frivolous individual *986 income tax return for tax year 1998. Therefore, I concluded in the Notice of Determination (Exhibit 3) that the frivolous return penalty had been properly imposed.
Id., ¶ 14.
Petitioner then filed a petition with this court, in which he asserts that the CDP hearing, as conducted, was not conducted according to the law and federal regulations. See id. at ¶¶ 4-11, 18(a)-(j). Petitioner further alleges in his complaint that the appeals officer, who conducted his hearing, "ignor[ed] his own job description and responsibilities." Id. at ¶ 21. Petitioner also alleges that the "penalty" imposed by the IRS was not supported by testimony or evidence, and that "[n]o statut[ory] Notice and Demand for payment was ever sent" to him. See id. at ¶¶ 3, 22. In a document filed with this court on February 21, 2002, Petitioner stated that in his Complaint, "[he] is not seeking a refund for income tax penalty," but rather requests that the court set aside what he alleges is an invalid collection due process determination, and that the court award him damages on this basis. Doc. 13.
For relief, Petitioner asks this court to declare that no valid hearing was conducted and that there was no valid IRS determination; to order the IRS to reimburse him for his expenses in bringing this action; and to award him punitive damages. Id.

STANDARD FOR SUMMARY JUDGMENT
The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Celotex). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (Anderson). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
A moving party always bears the burden of informing the court of the basis of its motion. See Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 247, 106 S.Ct. 2505. The nonmoving party may not rest upon mere allegations or denials of his pleading. See id. at 256, 106 S.Ct. 2505.
In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255, 106 S.Ct. 2505. The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249, 106 S.Ct. 2505.

DISCUSSION

Proper Service:
The IRS contends that the Complaint should be dismissed because Petitioner failed to effectuate proper service, as he did not serve the IRS. See Resp. Mem. at 4. The IRS argues, in the alternative, that Petitioner should be ordered to cure this defect. See id. at 5.
*987 Fed.R.Civ.P. 4(i)(1)(A) provides that service on the United States is effected by "delivering a copy of the summons and of the complaint to the United States Attorney for the district in which the action is brought." Fed.R.Civ.P. 4(i)(2)(A) provides that "[s]ervice on an agency or corporation of the United States ... is effected by serving the United States in the manner prescribed by Rule 4(i)(1) and by also sending a copy of the summons and complaint by registered or certified mail to the ... agency."
In a Memorandum to the Clerk, Plaintiff stated that he served the IRS, by certified mail, # 7001-1940-002-6704-0843, in addition to personally serving the United States Attorney. See Doc. 4. Also, in his Objection, Petitioner contends that he effectuated proper service. See Doc. 11 at 2. Petitioner's compliance with Rule 4(i) need not be resolved pursuant to the IRS's motion for summary judgment, however, because the court finds, for the reasons stated below, that summary judgment is appropriate based on other grounds.

Petitioner's Underlying Tax Liability:
The IRS argues, in a footnote, that Petitioner's challenge to his underlying tax liability, for the year ending December 31, 1998, should be dismissed, as it is not properly before the court. Petitioner states that his "tax return is not an issue in this litigation." Doc. 11 at 11. He further states that "the merits of [his tax] return [are] irrelevant and immaterial in connection with this appeal, since it was not an issue for discussion at Petitioner's CDP hearing and it was not an issue that the appeals officer had to consider." Id. The court concludes that Petitioner does not seek to challenge his underlying tax liability in the matter before this court. Additionally, as stated above, the IRS has abated Petitioner's income taxes assessed for 1998. See Wilke Decl. at ¶ 13. Therefore, the court concludes that Petitioner's underlying tax liability is not an issue submitted to this court by Petitioner's Complaint, and the court, therefore, will not address this issue.

Petitioner's Challenges to the CDP Hearing:
Petitioner generally alleges that he was denied a fair and/or meaningful hearing, within the meaning of 26 U.S.C. § 6320 and § 6330. 26 U.S.C. § 6320(a)(3)(B) provides that a notice to a taxpayer, of the IRS's intent to impose a lien, must inform the person of the right to request a hearing. Section 6320(b)(4) states that "[t]o the extent practicable, a hearing under [§ 6320] shall be held in conjunction with a hearing under section 6330." Section 6330(a) requires that the IRS conduct a hearing before making a levy on the property of any person, and Section 6330(b) provides for the right to a "fair hearing." Significantly, the requirements for a fair hearing, as set forth in both § 6320 and § 6330, specify that the hearing shall be at the IRS offices; that a person is entitled to only one hearing with respect to the taxable period at issue; and that the hearing officer shall be impartial. See 26 U.S.C. § 6320(b)(1)-(3); 26 U.S.C. § 6330(b)(1)-(3). Although Petitioner alleges that he was denied a fair and/or meaningful hearing, he does not allege that any of the three conditions for a fair hearing, as specified by § 6320(b)(1)-(3) and § 6330(b)(1)-(3), were not met.
Additionally, § 6330(c) sets forth the issues which shall be considered at a hearing, which matters include any relevant issues in regard to unpaid taxes and the underlying tax liability, where an individual did not otherwise have an opportunity to dispute such tax liability. Petitioner, however, alleges that "[n]o provision of [§ 6330] ... allows [appeals officers] to dictate to taxpayers the issues they will *988 consider at the hearing prior to the CDP hearings being held." Doc. 1 at ¶ 12. Petitioner does not suggest that, at his CDP hearing he was denied the opportunity to raise any issue. In fact, the court finds that the transcript of the hearing establishes that the appeals officer afforded Petitioner every opportunity to address issues of his choosing. See Pet. Ex. C. Based on the unrefuted facts, the court finds that the IRS complied with the requirements of § 6320 and § 6330 in regard to the conditions for a CDP hearing.
The IRS argues that Petitioner's claim that he was denied a fair and meaningful hearing because he was denied discovery should be dismissed. In support of this position, the IRS argues that discovery is not available in CDP hearings. See Resp. Mem. at 5.
In response to the IRS's argument that he was not entitled to discovery, Petitioner states that his "request was not a discovery request." Id. at 2. Rather than address the arguments raised by the IRS in this regard, Petitioner addresses issues relevant to an alleged notice requirement. Petitioner does not argue a statutory right to discovery exists, but rather he argues, without authority, that because the IRS refused to comply with his discovery requests, he was not provided with a meaningful hearing. Petitioner argues that he "must have a right to know" who the IRS employees are who imposed "the alleged penalty" against him. Doc. 11 at 7.
Despite Petitioner's claim in his Objection that he did not make a discovery request, Petitioner alleges, in his Complaint, that he sent a request for production to the IRS and that he requested that the appeals officer have numerous documents and information present at the CDP hearing. See Doc. 1 at ¶¶ 11-12. He further alleges that the IRS did not produce or present him with documents which he sought. See id. at ¶ 18(a)-(f). These items included verification that the IRS procedures were met; documentation to support the imposition of a penalty; the federal identification of IRS employees who imposed the penalty; delegation orders from the Secretary to these employees; job descriptions of these employees; treasury department regulations. See id. Petitioner also alleges, in his Complaint, that the appeals officer did not produce documents signed by IRS employees supporting or authorizing the imposition of the penalty; that he did not identify regulations or produce statutes; and that he refused to provide documented proof that the Secretary authorized the collection action. See id. at ¶ 18(a)-(f). Petitioner also argues, in his Objection, that it is necessary for him to know the identity of IRS employees who imposed the penalty against him in order for him to determine if they "stayed within the bounds" of their authority. See Doc. 11 at 7. Petitioner's Complaint, therefore, alleges that he had a right to discovery of the aforementioned documents, information, regulations, statutes and communications, and his Objections argue in support of this position. Because it is apparent that Petitioner argues that he has a right to discovery, the court will address the IRS's argument that Petitioner is not entitled to discovery.
The IRS admits that it did not produce the specific documents requested by Petitioner, but it contends that "taxpayers do not have the right to call witnesses or obtain discovery at a CDP hearing." Resp. Mem. at 6 (citing Davis v. Comm'r, 115 T.C. 35, 2000 WL 1048515 (2000); Katz v. Comm'r, 115 T.C. 329, 2000 WL 1520318 (2000) (Katz); Konkel v. Comm'r, 2000 WL 1819417 (M.D.Fla.2000) (Konkel)).
In Katz, 115 T.C. at 335, the tax court held that a meaningful hearing, pursuant to § 6330, does not include the right *989 to "subpoena witnesses and documents." The tax court further stated that the "nature of the [a]ppeals process does not include the taking of testimony under oath or the compulsory attendance of witnesses." Id. (citation omitted). The tax court noted that appeals hearings historically have been conducted in an informal manner, and that "nothing in section 6330 or the legislative history indicated Congress intended to alter this format." Id.; see also Konkel, 2000 WL 1819417, at *4 (holding that "there is no indication in the legislative history or the language of § 6330 that Congress intended for taxpayers to have the right to subpoena witnesses or documents at a collection due process hearing"). The court notes that § 6320 and § 6330 include similar language in regard to the requirements for a fair hearing. Considering that there is no right to discovery in hearings conducted pursuant to either § 6320 and § 6330, and further considering the unrefuted facts, the court finds that Petitioner was not denied the right to a fair and/or meaningful hearing based on the failure of the IRS and/or the appeals officer to provide him with the information, documentation, regulations, communications, and statutes, specified in his Complaint.
Even, assuming, arguendo, that discovery was available to Petitioner, the court finds that many of the documents and information which Petitioner sought were not relevant to claims or defenses of either Petitioner or the IRS. See Fed.R.Civ.P. 26(b)(1). These include communications between IRS employees designating their authority to act in Petitioner's case, and IRS employee information, including their identification numbers and job descriptions. In addition to documents and information which the court finds irrelevant to the matter before the appeals officer, Petitioner sought production of regulations and statutes. The regulations and statutory provisions are public information and are, therefore, accessible to Petitioner. Significantly, Petitioner included, as Exhibit D, with his Complaint, a document titled "Screening Committee Case," which document purports to be the report of an IRS employee's investigation concluding that a penalty should be levied against Petitioner.
Thus, even assuming, arguendo, that Petitioner was entitled to discovery at his CDP hearing, because those items which Petitioner alleges the IRS and/or the appeals officer should have provided to him either were not relevant to his case or were public information otherwise accessible to him, the court finds that the unrefuted facts and applicable law do not establish that the IRS failed to produce any documentation to which he was entitled. The court further finds no merit in Petitioner's claim that he was denied a meaningful and/or fair hearing, pursuant to 26 U.S.C. §§ 6320 and 6330, because the IRS and/or the appeals officer failed to produce or provide him with information, documentation, regulations, communications, and statutes, which he requested.
Petitioner alleges that he did not receive a meaningful and/or fair hearing because the notice he received of his right to a hearing was not sent by the Secretary of the Treasury, but rather by a "Jeffrey D.," who is identified as Chief of the Automated Collection Branch of the IRS.[7]See Doc. 11 at 3; Resp. Ex. 3. Petitioner further alleges that the Secretary must authorize an employee to send such a notice, and that, because the appeals officer did not provide proof that such authorization was given, Petitioner did not receive a fair hearing. See id.
*990 The court finds that this argument is without merit because, as acknowledged by Petitioner, § 7701(a)(11)(B) defines Secretary to include Secretary of Treasury or the Secretary's "delegate." See Doc. 11 at 3. Section 7701(a)(12)(A) states that when the term "delegate" is "used with reference to the Secretary of the Treasury, [it] means any officer, employee, or agency of the Secretary of the Treasury, duly authorized directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context." Thus, despite the fact that § 6320 and § 6330 require that the Secretary inform an individual of their right to a hearing, such correspondence need not be signed by the Secretary, but it can be signed by the Secretary's delegate. Letter 1058, which was sent to Petitioner in October 2000, and which informed him of his right to a hearing, was signed by the Chief of the Automated Collection Branch of the IRS. See Resp. Ex. 3. Therefore, the court finds that Petitioner was not denied a fair hearing because the notice of his right to a hearing was not signed personally by the Secretary, nor was he denied a fair hearing because the appeals officer did not provide him with verification that the Secretary authorized the notice.
In its Motion for Summary Judgment, the IRS argues that Petitioner's claim that he did not receive a fair hearing because he did not receive a statutory notice of deficiency is without merit. See Resp. Mem. at 7. Petitioner contends that he did not make this allegation in his Complaint. See Doc. 11 at 9. Petitioner, however, states that it "was made very clear at the CDP hearing that Petitioner never received such notice. Therefore, it was not an issue." Id. Petitioner further states that the reason the IRS abated his taxes was that it did not send a notice of deficiency; that actions by a federal agency in violation of its own regulations are void; and that, therefore, the IRS cannot levy, pursuant to § 6331. See id. at 9-10. Also, in Petitioner's Complaint he alleges that he did not receive notice and demand, as required by 26 U.S.C. §§ 6303, 6321, 6331. See Doc. 1 at ¶¶ 22.
Because it is apparent that Petitioner contends that the IRS's determination that he is liable for a penalty is void because he did not receive notice of deficiency, the court will address the IRS's argument that summary judgment should be granted in this regard. In support of its position, the IRS admits that notice of deficiency was not issued, but further states that penalties are not subject to deficiency procedures, according to 26 U.S.C. § 6703(b). See Resp. Mem. at 7. The IRS submits that it issued a notice of intent to levy, and that, according to § 6330, this notice meets the requirements for assessment of a penalty for filing a frivolous return. See id.
The IRS further argues that because his taxes were abated and because the IRS only sought a penalty, Petitioner was entitled to notice and opportunity for a hearing pursuant to § 6330, and that the IRS complied with this requirement. The IRS also argues that § 6303(a) provides that the IRS is required to give an individual notice that he or she is liable for unpaid tax, but that it complied with this requirement.
Section 6321 provides for a lien for taxes, where a person neglects or refuses to pay the taxes after demand. Deficiency procedures, according to § 6331(a), require that persons who refuse to pay tax receive "notice and demand" that the IRS intends to collect the tax by levy. Further, § 6331(d)(4)(A)-(F) specifies that notice pursuant to subsection (a) state, among other things, administrative appeals and alternatives available to the taxpayer, as well as explain levy procedures. Section 6703(b), however, provides that penalties are not subject to deficiency procedures. *991 In particular, § 6703(b) states that statutory provisions relating to deficiency procedures "shall not apply with respect to the assessment or collection of the penalties provided by sections 6700, 6701, and 6702."[8] Section 6702 provides for penalties for filing a frivolous tax return. The CDP hearing conducted by the IRS addressed the penalty imposed upon Petitioner for filing a frivolous return. The court finds that the hearing was not conducted for any purpose which would have made it subject to deficiency procedures set forth in 26 U.S.C. § 6331.
The court finds that because the IRS sought to impose a penalty upon Petitioner for filing a frivolous tax return, the statutory provisions regarding deficiency procedures were not applicable to his case.[9] Thus, the provisions of § 6321 and § 6331 are not applicable to the CDP hearing, which addressed the imposition of a penalty against Petitioner for filing a frivolous return. Because the IRS was not required to satisfy statutory requirements for notice of a tax deficiency when issuing the notice to Petitioner of an assessment of a penalty for a frivolous return, the court finds that Petitioner's claim that the hearing was invalid because the IRS failed to comply with requirements for deficiency hearings is without merit. See Sage v. United States, 908 F.2d 18, 22 (5th Cir. 1990).
The notice of intent to levy, which Petitioner did receive, sets forth: (1) the amount of his unpaid tax, which was the $500 penalty, and requests payment thereof; (2) the Petitioner's right to a CDP hearing; and (3) the proposed action by the IRS if the payment was not made. Section 6303(a) requires that notice of unpaid tax must state the amount; demand payment thereof; and be left at the taxpayer's home or business or be mailed to the taxpayer's last known address. Section 6330(a)(2) imposes the same requirements on a notice prior to levy. Because it stated that Petitioner owed $500 as a penalty and demanded payment thereof, and because it was sent to Petitioner's last known address, the court finds that letter 1058 complied with the notice requirements of § 6303(a) and § 6330(a)(2).
Additionally, § 6330(a)(3) specifies that the notice also include: "(A) the amount of the unpaid tax; (B) the right of the person to request a hearing ...; (C) the proposed action by the Secretary, and the rights of the person with respect to such action." Letter 1058 informed Petitioner of his right to a hearing prior to levy; informed him that he owed $500 as a penalty; briefly set forth the IRS's proposed action, statutory provisions relating to levy, administrative appeals, and alternatives to prevent levy; and enclosed an IRS publication entitled "Understanding the Collection Process." Having considered the uncontroverted facts and the applicable statutes, the court concludes that the IRS complied with all of the requirements of § 6330(a)(3), as well as all the requirements of § 6303 and § 6330(a)(1)-(2). Under *992 such circumstances, Petitioner received all the notice that is required by law. Beyond these requirements, "the Internal Revenue Code does not mandate the use of any specific form of notice." United States v. Roccio, 981 F.2d 587, 591 (1st. Cir.1992). Therefore, the court finds without merit Petitioner's assertion that he did not receive proper notice, and will not find Petitioner's CDP hearing "invalid" based on Petitioner argument that he did not receive statutory notice.
Petitioner alleges in the Complaint that the hearing officer ignored his own job description and responsibilities. See Doc. 1 at ¶ 21. 26 U.S.C. §§ 6320(b)(3), 6330(b)(3), merely require that the hearing officer be "impartial." Petitioner has not alleged impartiality on the part of the hearing officer. Even assuming, arguendo, that the hearing officer ignored his job description and responsibilities, as alleged by Petitioner, Petitioner has not provided authority for his assertion that such conduct renders the hearing invalid.
Because Petitioner's hearing was conducted according to statutes applicable to IRS penalty procedures for frivolous returns, and because Petitioner received a fair and meaningful hearing in regard to the IRS's penalty determination, the court denies Petitioner's request that the court declare Petitioner's hearing invalid, that it set aside the collection due process determination, and that it award him damages on this basis.

Alleged Frivolous Return and Resulting Penalty:
Petitioner asserts that the IRS should not have imposed a penalty on him, as a result of filing his 1998 tax return. See Doc. 11 at 12. The IRS argues that summary judgment is appropriate because it correctly determined that Petitioner filed a frivolous return. See Resp. Mem. at 8.
Despite the fact that the penalty imposed on Petitioner was based on his filing a frivolous return, Petitioner argues that his return is not at issue in this matter. See Doc. 11 at 11. Because Petitioner argues that the penalty should not have been imposed and because the penalty was based on the IRS's finding that his tax return was frivolous, the court must consider whether the return was frivolous, in order to determining whether the penalty imposed on Petitioner was proper.
26 U.S.C. § 6702(a) provides for a penalty for a frivolous tax return when:
(1) any individual files what purports to be a return of the tax imposed by subtitle A but which 
(A) does not contain information on which the substantial correctness of the self-assessment may be judged, or
(B) contains information that on its face indicates that the self-assessment is substantially incorrect; and
(2) the conduct referred to in paragraph (1) is due to 
(A) a position which is frivolous.
Petitioner claims that the wages he earned were not income. The Third Circuit, however, has stated that "[e]very court which has ever considered the issue has unequivocally rejected the argument that wages are not income." United States v. Connor, 898 F.2d 942, 943 (3d Cir.1990). The Eighth Circuit has rejected this claim on numerous occasions. See, e.g., United States v. Francisco, 614 F.2d 617, 619 (8th Cir.1980). Moreover, the Eighth Circuit has held that an appeal of this issue is itself "frivolous." Id. The premise that wages are taxable income is so well established that decisions issued by the Eighth Circuit, in this regard, are per curium. See, e.g., Funk v. Comm'r, 687 F.2d 264, 265 (8th Cir.1982) (per curiam); Broughton v. United States, 632 F.2d 706, 707 (8th Cir.1980) (per curiam); Hayward *993 v. Day, 619 F.2d 716, 717 (8th Cir.1980) (per curiam). Moreover, the Eighth Circuit holds that a claim that wages are not income, and therefore, that they are not taxable, is frivolous. See Connor, 898 F.2d at 944.
Because Petitioner claimed, on his tax return, that he did not owe taxes on wages earned because those wages are not taxable income, and because this position is frivolous, the court finds that the uncontroverted facts establish that Petitioner's tax return was frivolous and, therefore, subject to a penalty pursuant to 26 U.S.C. § 6702.
26 U.S.C. § 6703(a) provides that the burden for establishing liability for a penalty under § 6702 rests with the IRS. Because the uncontroverted facts establish that Petitioner's 1998 tax return was frivolous, and because the IRS complied with applicable procedural requirements upon imposing a penalty on Petitioner for filing a frivolous return, the court finds that the penalty, imposed upon Petitioner was properly imposed and consistent with all statutory requirements, and that the IRS met its burden for establishing Petitioner's liability for a penalty.
Petitioner argues that decisions of federal courts, including the tax court, are not binding on him. See Doc. 11 at 11. In response to this assertion, the court refers Petitioner to the attachment to his 1998 federal income tax return, in which he acknowledges that IRS employees are bound to follow federal statutes and court decisions. See Resp. Ex. 1, Attach. at 3. Additionally, Petitioner's Complaint seeks enforcement of federal statutes. Because Petitioner's assertion that decisions of federal courts are not binding upon him contradicts the allegations of, and request for relief in, his Complaint, the court need not address this argument.

CONCLUSION
For the reasons discussed above, the court finds that Petitioner's 1998 tax return was frivolous and that the IRS concluded correctly that he should be subject to a penalty as a result. The court further finds that the IRS provided Petitioner with the notice required by statute regarding the penalty which it imposed on him as a result of his filing a frivolous return. The court further finds that Petitioner's CDP hearing was conducted according to all statutory requirements and that Petitioner received a fair and meaningful hearing. Therefore, the court denies Petitioner the relief which he seeks in his Complaint, and grants the IRS's Motion for Summary Judgment.
Accordingly,
IT IS HEREBY ORDERED that Respondent United States of America's Motion for Summary Judgment (Doc. 9) is GRANTED;
IT IS FURTHER ORDERED that Petitioner Billy R. Kelly's Complaint (Doc. 1) is DISMISSED.
NOTES
[1] 26 U.S.C. § 6330(c)(1) provides that "[t]he appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."
[2] 26 U.S.C. § 6331(a) requires that notice and demand be given to a person liable to pay any tax who neglects or refuses to pay the tax. In particular, § 6331(d) sets forth the requirement of notice before levy. Section 6331(d)(4) sets forth the information which must be included with the notice.
[3] The Internal Revenue Service ("IRS") appeals officer responsible for conducting Petitioner's Collection Due Process ("CDP") Hearing was Douglas Wilke. Brenda Meyer, also an appeals officer, participated in, and contributed to, the hearing. See Doc. 1, Ex. C at 1.
[4] Exhibit D, attached to Petitioner's Complaint, is a "Screening Committee Case Approval Record," which reflects that an IRS employee reviewed Petitioner's tax return and concluded that he should be assessed a $500 penalty pursuant to 26 U.S.C. § 6702. See Doc. 1, Ex. D. Petitioner does not describe the means by which he accessed this document.
[5] CP 503, CP 504, and CP 14 are not submitted as exhibits before this court, by either party.
[6] In an affidavit to this court, IRS hearing officer Douglas Wilke clarified that because Petitioner had not received notice for the math error, this letter informed Petitioner that income tax assessed for the tax year 1998, would be abated and any reassessment of this tax would be subject to IRS deficiency procedures. See Wilke Decl., ¶ 13.
[7] "Jeffrey D." signed his last name to Letter 1058, but it is not legible.
[8] 26 U.S.C. § 6700 provides for penalties for "promoting abusive tax shelters". Section 6701 provides for penalties for aiding and abetting understatement of tax liability.
[9] As discussed above, the IRS abated Petitioner's underlying tax liability for 1998, and acknowledged that any reassessment of tax for that period will be subject to deficiency procedures. See Wilke Decl., ¶ 13. Petitioner cites United States v. Coson, 286 F.2d 453 (9th Cir.1961), Bauer v. Foley, 404 F.2d 1215 (2d Cir.1968), and Shapiro v. Secretary of State, 499 F.2d 527 (D.C.Cir.1974), in support of his argument that lack of proper notice or demand is fatal to the acquisition of a IRS lien. As found above, deficiency procedures are not applicable to an assessment of a penalty for filing a frivolous tax return. Therefore, cases, which require notice and demand where underlying tax liability is at issue, are not applicable to the matter under consideration.